## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | |
|---|---|
| STATE OF INDIANA EX REL. ROKITA, <br><br> Plaintiff, <br><br> v. <br><br> INDIANA UNIVERSITY HEALTH, INC.; <br> and <br><br> INDIANA UNIVERSITY HEALTHCARE ASSOCIATES, INC. d/b/a IU HEALTH PHYSICIANS, <br><br> Defendants. | Case No. 1:23-cv-1665 <br><br> **COMPLAINT FOR INJUNCTIVE RELIEF, DAMAGES, COSTS AND ATTORNEYS' FEES** <br><br> **REQUEST FOR JURY TRIAL** |

## I. PRELIMINARY STATEMENT

On June 29, 2022, a ten-year-old rape victim and her mother checked in to an Indiana-based hospital operated by Indiana University Health, Inc. ("IUH") to terminate a pregnancy resulting from the rape. The following morning, while still checked-in at the hospital, the mother and daughter were greeted with an above-the-fold front page news story in the local paper, *Indianapolis Star*, describing the 10-year-old's case. The news story quoted the girl's doctor. The 10-year-old's treatment was a very private and sensitive matter, as was the abuse she suffered that resulted in her pregnancy. Neither the 10-year-old nor her mother gave the doctor authorization to speak to the media about their case.

Rather than protecting the patient, the hospital chose to protect the doctor, and itself. On July 15, 2022, hospital administrators emailed statements to multiple media outlets informing them that they had conducted a review and, "found [the doctor] in compliance with privacy laws." On May 25, 2023. the Indiana Medical Licensing Board conducted a hearing and determined that: [the

doctor] violated HIPAA rules 42 C.F.R. §164.502(a) by improperly disclosing patient information and 42 C.F.R. §164.514 for improperly de-identifying patient information, and; [the doctor] violated the Indiana patient confidentiality rule 844 I.A.C. 5-2-2 by failing to get patient permission prior to disclosing any patient information.

The following day, on May 26, 2023, IUH issued a public statement in which it disagreed with the Medical Licensing Board's determination once again claiming [the doctor] did not violate privacy laws.  Subsequent to the Medical Licensing Board hearing, Plaintiff has discovered numerous instances where IUH has sanctioned non-physician employees with termination for far less egregious patient privacy violations.

By publicly contradicting the Medical Licensing Board by contending [the doctor's] actions were "in compliance with privacy laws," and through its inconsistent application of its privacy policies and sanctions among its 36,000 member workforce, IUH has created confusion regarding what conduct is permitted under HIPAA privacy laws and the Indiana Patient Confidentiality rule.  The inconsistencies and confusion threaten the privacy of its Indiana patients.

The Plaintiff, Attorney General Todd Rokita, as *parens patriae* for the residents of the State of Indiana and on behalf of the State of Indiana in its sovereign capacity, institutes this action for injunctive relief, statutory damages, attorneys' fees, and the costs of this action against Indiana University Health, Inc. and Indiana University Healthcare Associates, Inc. d/b/a IU Health Physicians alleging violations of the Health Insurance Portability and Accountability Act of 1996, as amended by the Health Information Technology for Economic and Clinical Health Act of 2009, and Department of Health and Human Services Regulations, 45 C.F.R. § 160, *et seq.* (collectively referred to as "HIPAA").

## II. JURISDICTION AND VENUE

1.      The Court has jurisdiction for this cause of action pursuant to 42 U.S.C. § 1320d-5(d) and 28 U.S.C. § 1331.

2.      The Court has supplemental jurisdiction for the State's claims against Defendants under Indiana law pursuant to 28 U.S.C. §1367.

3.      Venue in this District is proper pursuant to 28 U.S.C. § 1391(b)(2), (c) and (d).

4.      Plaintiff, Attorney General of the State of Indiana, has provided notice of this action to the Secretary of Health and Human Services as required under 42 U.S.C. § 1320d-5(d)(4).

## III. PARTIES

5.      Plaintiff, Attorney General of the State of Indiana, is authorized to bring this action and to seek injunctive and other statutory relief pursuant to 42 U.S.C. § 1320d-5(d)(1).

6.      Indiana University Health, Inc. (hereafter "IUH") is a corporation organized under the laws of the State of Indiana, with headquarters located at 340 W. 10th Street, Indianapolis, Indiana 46202.

7.      Indiana University Healthcare Associates, Inc. (hereafter "IU Health Physicians") is a corporation organized under the laws of the State of Indiana, with headquarters located at 340 W. 10th Street, Indianapolis, Indiana 46202.

## IV. STATE OF INDIANA'S PUBLIC POLICY INTEREST
## IN PROTECTING PATIENT PRIVACY

8.      IUH operates medical facilities throughout the State of Indiana.

9.      Upon information and belief, the vast majority of IUH's patients reside in Indiana.

10.     The "Hippocratic Oath imposes on physicians a duty to maintain confidences acquired in their professional capacity"; Am. Med. Ass'n, Code of Medical Ethics Opinion 3.2.1, https://www.ama-assn.org/delivering-care/ethics/confidentiality (stating that physicians "have an

ethical obligation to preserve the confidentiality of information gathered in association with the care of the patient"); *Vargas v. Shepherd*, 903 N.E.2d 1026, 1031-32 (Ind. Ct. App. 2009) (acknowledging argument that medical providers assume a duty to abide by ethical guidelines, including obtaining patient consent before disclosing any medical information, and assuming without deciding that such a duty exists).

11.     The importance of patient privacy in the State of Indiana is a deeply rooted and historically cherished value.  In 1881, the Indiana Supreme Court discussing the physician-patient privilege stated:

> [It] seals the lips of the physician against divulging in a court of justice the intelligence which he acquired while in the necessary discharge of his professional duty. It was enacted for the purpose of extending to the relation between a patient and his physician the same rule of public policy by means of which the common law protected the professional confidence necessarily existing between a client and his attorney. We deem it a wise and salutary enactment.

*Masonic Mut. Ben. Ass'n v. Beck* 77 Ind. 203 (Ind. 1881) cited by *Canfield v. Sandock*, 563 N.E. 2d 526 (Ind. 1990).

12.      In 1971, the Indiana Supreme Court, in discussing the physician-patient privilege wrote:

> [It] has been justified on the basis that its recognition encourages free communications and frank disclosure between patient and physician which, in turn, provided assistance in proper diagnosis and appropriate treatment.  To deny the privilege, it was thought, would destroy the confidential nature of the physician-patient relationship and possibly cause one suffering from a particular ailment to withhold pertinent information of an embarrassing or otherwise confidential nature for fear of being publicly exposed.

*Collins v. Bair*, 256 Ind. 230, 268 N.E. 2d 95 (Ind. 1971) quoted in *Canfield v. Sandock*, 563 N.E. 2d 526, 529 (Ind. 1990).

13.     Indiana has incorporated its longstanding tradition of protecting patient privacy in its Standard of Professional Conduct and Competent Practice of Medicine, specifically the requirement of confidentiality which states:

> A practitioner shall maintain the confidentiality of all knowledge and information regarding a patient, including but not limited to, the patient's diagnosis, treatment, and prognosis, and of all records relating thereto, about which the practitioner may learn or otherwise informed during the course of, or as a result of, the patient-practitioner relationship.  Information about a patient shall be disclosed by a practitioner when required by law . . .or when authorized by the patient or those responsible for the patient's care.

844 IAC 5-2-2.

## V. BACKGROUND

14.     At all times relevant to this Complaint, IUH was Indiana's largest health network, with over 36,000 team members and serving over 100,000 admissions per year.  The vast majority of those patients are Indiana residents.

15.     At all times relevant to this Complaint, IU Health Physicians provided physician services to IUH and to patients in the IUH network.

16.     IUH currently describes IU Health Physicians as an affiliated covered entity. See https://cdn.iuhealth.org/resources/IU-Health-Affiliated-Covered-Entity-Privacy-Practices.pdf, last accessed September 11, 2023.

17.     IU Health Physicians is an affiliated covered entity as permitted by 45 CFR §164.105(b)(1).  As affiliated covered entities, Plaintiff will address the two entities as a single organization for the remainder of this complaint ("IUH").

18.     At all times relevant to this Complaint, IUH was engaged in business in Indiana, operating as a health care provider for Indiana residents. Federal and state law imposes strict confidentiality requirements on healthcare facilities and licensed physicians with respect to treatment of patients. HIPAA, for instance, imposes a national standard to protect sensitive patient

medical records and individually identifiable health information from being disclosed. 42 U.S.C. § 1320d *et seq*.; 45 C.F.R. § 160.103.

19.     HIPAA applies to health plans, health care clearinghouses, and health care providers ("covered entities") 45 CFR §160.102(a)

20.     IUH is a health care provider and covered entity for purposes of HIPAA. 45 CFR § 160.103.

21.      HIPAA's general privacy rule strictly limits health care providers' ability to disclose a patient's medical records or discuss medical history in any form, except as permitted under the rules. 45 C.F.R. § 164.502(a).

22.     To disclose protected health information to the media without violating the privacy rule, a health care provider must have previously obtained a HIPAA-compliant authorization signed by the patient or her guardian. U.S. Dep't of Health & Human Servs., *Can health care providers invite or arrange for members of the media, including film crews, to enter treatment areas of their facilities without prior written authorization?* (Apr. 16, 2016), www.hhs.gov /hipaa/for-professionals/faq/2023/film-and-media/index.html ("the HIPAA Privacy Rule does not allow media access to the patients' PHI, absent an authorization").

23.     A covered entity must document that it has in place the appropriate administrative, technical, and procedural safeguards to protect the privacy of protected health information ("PHI") 45 C.F.R. §164.530(c)(1).

24.     A covered entity must document disclosures of protected health information that are subject to an accounting.  45 CFR §164.528(d).

25.     A covered entity must provide a process for individuals to make complaints of its policies and procedures or its compliance with those policies and procedures implementing HIPAA specifications. 45 C.F.R. §164.530(d)(1).

26.     A covered entity must document all complaints received and the disposition, if any. 45 C.F.R. §164.530(d)(2).

27.     A covered entity "must have and apply appropriate sanctions against members of its workforce who fail to comply with the privacy policies and procedures of the covered entity." 45 C.F.R. §164.530(e)(1).

28.     A covered entity must document sanctions applied, if any. 45 C.F.R. §164.530(e)(2).

29.     HIPAA defines a "Breach" as, "the acquisition, access, use, or disclosure of protected health information in a manner not permitted under subpart E of this part which compromises the security or privacy of the protected health information. 45 CFR §164.402.

30.     A covered entity must provide notification to each individual whose personal health information has been acquired, used or disclosed as a result of a breach. 45 CFR §164.404(a)(1).

31.     HIPAA regulations provide: "A covered entity must mitigate, to the extent practicable, any harmful effect that is known to the covered entity of a use or disclosure of protected health information in violation of its policies and procedures or the requirements of this subpart by the covered entity or its business associate. 45 C.F.R. §164.530(F).

32.     HIPAA regulations also provide: "In the case of continuing violation of a provision, a separate violation occurs each day the covered entity or business associate is in violation of the provision." 45 C.F.R. § 160.406.

33.     The maximum fine per HIPAA violation under a state attorney general's enforcement of HIPAA is up to $100 per violation. 42 U.S.C. § 1320d-5(d)(2).

34.     The maximum penalty during a calendar year for similar violations under a state attorney general's enforcement of HIPAA is up to $25,000 per violation of an identical requirement per year. 42 U.S.C. § 1320d-5(d)(2).

## VI. FACTUAL ALLEGATIONS

35.     At all times relevant to this Complaint, IUH provided healthcare services to Indiana residents and was a healthcare provider within the meaning of HIPAA.

36.     On June 27, 2022, Dr. Caitlin Bernard, M.D., ("Dr. Bernard"), a physician employed by IU Health Physicians who worked in the IUH clinic received a call from an Ohio physician who referred a ten-year-old girl who had been raped and was pregnant in order to receive an abortion at IUH.

37.     Indiana law requires physicians performing an abortion to submit a report to the Indiana Department of Health as required by I.C. §16-34-2-5.

38.     Dr. Bernard was aware that the Termination of Pregnancy Reports were accessible to the public pursuant to Indiana's Access to Public Records Act I.C. §5-14-3 et seq.

39.     Dr. Bernard knew or should have known that any disclosure of information related to the 10-year-old patient could generate public interest that could result in additional requests to obtain copies of the redacted Termination of Pregnancy Report related to the 10-year-old patient.

40.     The 10-year-old patient was first seen and examined by IUH employees on June 29, 2022.  Upon information and belief, during its intake process on June 29, 2022, IUH did not document whether the girl or her mother were provided with a copy of the patient privacy notice. IUH did not obtain any authorization from the patient or her guardian which would have permitted IUH to speak to the media about her case.

41.     Dr. Bernard was aware of the initial intake and exam performed by her colleagues.

42.     Later that day, on June 29, 2022, in the evening after work, Dr. Bernard attended a public rally she helped organize on the IU School of Medicine campus.

43.     Dr. Bernard was one of the leaders of the rally, carrying a bullhorn, leading chants and acting as one of the speakers.

44.     During the rally, Dr. Bernard spoke with multiple reporters.

45.     At the rally, Dr. Bernard discussed her 10-year-old patient with another physician, Grant Callen, for reasons unrelated to treatment, payment, or operations.

46.     A reporter for the *Indianapolis Star*, who was covering the event, was physically close enough to the physicians during their conversation that she was able to overhear Dr. Bernard speaking about the 10-year-old girl.

47.     Dr. Bernard's sworn testimony described the interaction as follows:

> We were holding an event, a rally. I was speaking with another physician about the public health emergence [sic] that we were facing with multiple abortion bans coming down in other states and we were discussing how concerned we were with the types of patients that we knew would be harmed by these laws and the clinical scenarios in which we may need to take care of them here in Indiana. I mentioned to him that in fact, already just days a after the Ohio abortion ban had been passed, we were already seeing patients coming, including describing de-identified information about this particular patient. [The reporter] was standing nearby and overheard the conversation that I was having and after I was finished with him, asked to confirm the information that she had overheard.

*Caitlin Bernard, M.D. vs. Todd Rokita*, Cause No. 49D01-2211-MI-038101, November 21, 2022 Transcript, pp.144-145

48.     Dr. Bernard described the context of her conversation with the reporter as follows:

Q     Okay, so we've established that the reporter told you that she was writing a story about the effects of abortion, is that right?

A     The effects of abortion bans in the United States.

Q     Okay and that is the context in which you had the conversation about your ten year old patient from Ohio, is that right?

A     That is the context.

Id. At 156.

49.     Dr. Bernard disclosed the following facts to the reporter:

- Dr. Bernard had received a phone call from a child abuse doctor from Ohio on Monday, June 27, 2022, regarding a potential patient who was six weeks and three days pregnant;

- The patient was 10 years old;
- The patient had traveled to Indiana to be treated at IUH;
- The patient was there for an abortion;
- The patient had been raped;
- The patient was an Ohio resident;
- The patient was treated during the week of June 27; and
- The patient was being treated by Dr. Bernard.

50. On June 30, 2022, the 10-year-old girl was admitted as an inpatient to an IUH facility for an overnight stay to conduct the abortion procedure.

51. At 5:00 a.m. on Friday July 1, 2022, while the ten-year-old girl was still an inpatient in IUH's facility, the details of the girl's tragic story appeared in a front-page story in the *Indianapolis Star.* ("Patients head to Indiana for abortion services as other states restrict care," Indianapolis Star https://www.indystar.com/story/news/health/2022/07/01/indiana-abortion-law-roe-v-wade-overturned-travel/7779936001/ last accessed September 11, 2023).

52. The article in the *Indianapolis Star* explained that hours after the Supreme Court issued *Dobbs*, "the Buckeye state had outlawed any abortion after six weeks." *Id*. Then, on Monday, June 27, 2022 (three days after *Dobbs*), Dr. Bernard received a call from "a child abuse doctor in Ohio" who "had a 10-year-old patient in the office who was six weeks and three days pregnant" and thus was ineligible to obtain an abortion under Ohio law. *Id*. Dr. Bernard agreed to help, "[a]nd so the girl soon was on her way to Indiana to Bernard's care." Id.

53. Dr. Bernard's story about the 10-year-old rape victim "was quickly picked up by national outlets including Politico, The Washington Post, CNN, Teen Vogue, The Hill and numerous other outlets." *Caitlin Bernard, M.D. vs. Todd Rokita*, Cause No. 49D01-2211-MI-038101, Complaint Ex. D.

54.     President Biden used the incident in a speech to argue in favor of abortion exceptions for rape and incest. *Id.*

55.     As a direct and foreseeable result of Dr. Bernard's disclosure to the *Indianapolis Star* reporter, the media made requests to the Indiana Department of Health to obtain copies of Termination of Pregnancy Reports for the week identified by the newspaper story.

56.     As a direct and foreseeable result of Dr. Bernard's disclosure to the *Indianapolis Star* reporter, and the publicity that followed, the media identified and focused on the criminal proceeding against her alleged rapist, Gerson Fuentes, who later pled guilty.

57.     Lauren Cislak, Vice President Corporate Communications, Public Relations and Social Media at IUH, testified that her manager of Public Relations discovered the *Indianapolis Star* story and referred it to her as a possible HIPAA violation and she, in turn, referred the story to the IUH Privacy Office on July 5, 2022 as a possible HIPAA violation.

58.     Upon information and belief, the incident was assigned to an IUH investigator, Melissa Cockrum, a Privacy Office Project Manager, on July 5, 2022.

59.     As a direct and foreseeable result of Dr. Bernard's disclosure to the *Indianapolis Star* reporter, and the subsequent newspaper article published on July 1, 2022, the patient was designated a "high profile patient" and Ms. Cockrum placed a "Sensitivity Alert" on the patient's electronic medical record to limit access to the patient's medical records.

60.     Upon information and belief, IUH either did not have a policy or practice in place that required it to determine whether its privacy policies had been violated, or that it applied its policies inconsistently.

61.     Upon information and belief, IUH either did not have a policy or practice in place that required it to determine whether HIPAA or state confidentiality requirements were violated, or that it applied its policies inconsistently.

62.     Upon Information and belief, IUH did not, in fact, review whether its privacy policies, or HIPAA privacy rules, or Indiana patient confidentiality rules had been violated.

63.     Instead, IUH prepared a "Risk Assessment" review to determine whether IUH was required to issue notice of a data breach pursuant to the requirements of 42 C.F.R §164.408.

64.     In its Risk Assessment, IUH noted that, "The unauthorized person who used the protected health information or to whom the disclosure was made: Indianapolis S[t]ar."  The statement constitutes an admission that a violation of HIPAA's Privacy Policy occurred.

65.     IUH's definition of Personally Identifiable Information (PII) include "all elements of dates."

66.     In its "Risk Assessment," IUH failed to consider that Dr. Bernard told the reporter the precise day she received the patient referral and the week during which the abortion procedure was to be performed.

67.     Under the section of "Corrective Action," IUH wrote, "Dr. Bernard has been counseled on her on-going HIPAA and confidentiality obligations; Systemwide HIPAA Reminder was disseminated to the workforce on 7/12/22; and Refresher education was provided at the systemwide Privacy & Security Meeting on 7/11/22."

68.     At the conclusion of its Risk Assessment, IUH incorrectly concluded that the disclosure to an unauthorized person did not constitute the type of breach which required notification.

69.     On July 13, 2022, members of the Data Privacy Section of the Indiana Attorney General reached out to IUH's general counsel to schedule a meeting regarding the media reports earlier that day regarding an internal HIPAA investigation of Dr. Bernard.  During a video meeting with IUH's general counsel the following day on July 14, 2022, IUH declined to comment.

12

70. The next morning, July 15, 2022, IUH issued the following press release to a variety of media outlets:

> As part of IU Health's commitment to patient privacy and compliance with privacy laws, IU Health routinely initiates reviews, including the matters in the news concerning Dr. Caitlin Bernard. Pursuant to its policy, IU Health conducted an investigation with the full cooperation of Dr. Bernard and other IU Health team members. IU Health's investigation found Dr. Bernard in compliance with privacy laws.

71. Upon information and belief, the Risk Assessment conducted by IUH made no effort to determine whether Dr. Bernard was in compliance with privacy laws.

72. Upon information and belief, the Risk Assessment document prepared by IUH contains no reference to whether Dr. Bernard was in compliance with privacy laws. Consequently, the statement contained in its emailed Press Release was materially false.

73. The Risk Assessment document was saved with the title "IUH Risk Assessment Dr Bernard 7.18.22.docx"

74. As a direct and foreseeable result of its materially false statement, IUH undermined any privacy policy it had in place, and instead, by ratifying Dr. Bernard's conduct, IUH demonstrated to its workforce that discussing a patient's health matter with a reporter was permitted under HIPAA, thereby jeopardizing the privacy of all IUH patients.

75. On July 12, 2022, the Columbus Police Department arrested the boyfriend of the 10-year-old's mother, Gerson Fuentes, charging him with First Degree rape of the girl.

76. On July 21, 2022, the Franklin County, Ohio Clerk of Common Pleas – Criminal Division scheduled Mr. Fuentes Arraignment for July 25, 2022. Franklin County Ohio Case Information Online

https://fcdcfcjs.co.franklin.oh.us/CaseInformationOnline/caseSearch?b5ot3TLLVOGRZBvMXP3k, last accessed September 11, 2023.

77.     On July 22, 2022, Bethany Bruner of Columbus Dispatch/USA Today Network filed a Request to "Record/Photograph" the Arraignment proceedings. Her request was granted. Id.

https://fcdcfcjs.co.franklin.oh.us/CaseInformationOnline/imageLinkProcessor.pdf?coords=S6%2B7jNnVxp0mKFxUb4kRYZmpL4Sgu8Tk6K3IGKhM7%2FfFFQ1%2FMBCzG35j80Oxt%2FfeahdeUzKVJ3aynmHnY%2BFEs%2BGw8qB%2BAxrkidOmj7g0MVjaxFLYW3tXZ%2FKqRtJ4ufU37iUnWXCbcKERN5cvMPwZ2wczWoXq78C4yRXWKzOx4uE%3D, last accessed September 11, 2023

78.     On July 22, 2022, Ryan Finfrock of WBNS-TV filed his Request to "Broadcast/Televise/Record/Photograph" the Arraignment proceedings.  His request was granted. Id. at

https://fcdcfcjs.co.franklin.oh.us/CaseInformationOnline/imageLinkProcessor.pdf?coords=KgLnhARaj3AotFv9%2BwUnW%2FcDJtAsFSjmL%2FjnJ44GEPFrRNHMmLvhQ%2FBA65BmHZnyWrAnQJFYvjx4UkmxazXGQ%2F%2BLmYkQ0FP3zjyKoXa7t1X%2B3qVfeT6EQbcSNmleMQf1KsE9irgGbeNfCSVznxYmY4kvyMDjiE9886e9spuZtsc%3D, last accessed September 11, 2023.

79.     On July 22, 2022, an unnamed NBC4 Reporter/Photographer of WCMH NBC4 filed its Request to "Broadcast/Televise/Record/Photograph" the Arraignment proceeding.  Their request was granted. Id. at

https://fcdcfcjs.co.franklin.oh.us/CaseInformationOnline/imageLinkProcessor.pdf?coords=fXfXyJeyczOEZY6orB4XE3AkAv2OPzHdoE1hwsw6w2qevS1VmKRzTyoPbufpAefOunpyLPCmV%2FymU9EASl83th69KE0eH6ZHH5IAz102tDuoQfhMUjzOIOfPj%2BZu%2FGnmDtlEeB8SMRwTOaf8Hi9YqVXeDAv9EoGzk6d9gn0kAl8%3D, last accessed August 29, 2023.

80.     On July 22, 2022, Haley Nelson, LuAnn Stoia and Donny Sobr[sic] of WSYX/WTTE filed their request to "Broadcast/Televise/Record/Photograph" the Arraignment proceeding. Their request was granted. Id. At

https://fcdcfcjs.co.franklin.oh.us/CaseInformationOnline/imageLinkProcessor.pdf?coords=NZgviKan8E5C0ykAqWcz%2B2kd9bPAzGWoaGn%2FBPPIu8GRnMsqv3mI0gQ27wEqnwBSbEQr0zsltKj0FT5jBQiWdPbQoJ3TXzaWEOijDJehL3SaxPQk2HO94i1L2jhnCfKlzodN02joYw2qI8uTOZ1q%2FHvo0nikJjXOkzjt2AduBUI%3D, last accessed August 29, 2023.

81.     On July 25, 2022, The Associated Press filed its Request to "Photograph/Record" the Arraignment proceeding.  Its request was granted. Id. at

https://fcdcfcjs.co.franklin.oh.us/CaseInformationOnline/imageLinkProcessor.pdf?coords=F2R30IMM%2Fxas%2BkmGcARhkdiQLpsMeSSvD1shBIlrltBBpAnnbMk%2BfgL7LV6%2FtqpjUDuqjaRKkxTfB9TfMqtN%2BA9B8XwmIMrdKSDPt9aoGAjQ5MWPzv35ziHKeuagWXr%2BQcFXT3M7d5Xi%2Fh5rSP5Hou%2Ba1RyVcTGMyO7stGDDdLA%3D, last accessed August 29, 2023.

82.     On July 27, 2022, Andrew Welsh-Huggins, Patrick Orsagos and Kantele Franko Rouan of The Associated Press filed their Request to "record, photograph, broadcast" the Bond Hearing on July 28, 2022. Their request was granted. Id. at

https://fcdcfcjs.co.franklin.oh.us/CaseInformationOnline/imageLinkProcessor.pdf?coords=ci4tlK5JhfAzwXzakkqYMPH9qLG0BQTzcBcBzIzrt3wlfV%2Frdy7svhL11OlGIVjyxqublh2sO1Sj%2BXIe7ipHfuHj6mcYAukQqfugKIax4poUhYxdjN54X2FY80ho2G84v2YF%2BHVcyB1xXa4RNM3TA2Ea6SXyRNa1yXs53dtjqfc%3D, last accessed August 29, 2023.

83.     On July 27, 2022, Ryan Finrock of WBNS-TV filed his Request to "Broadcast/Televise/Record/Photograph" the Bond Hearing scheduled for July 28, 2022.  His request was granted. Id.

https://fcdcfcjs.co.franklin.oh.us/CaseInformationOnline/imageLinkProcessor.pdf?coords=li0Z8
5ij9sj4joZhI8oO4HVG5NKbtscchxvNyLstvkyqlB2Do2YWghwxenoy4wKoGjyEGtxA6%2FIke
kw4ySbc7lAaAMyVD5gh7%2BJBJdlhTgGecNHzxt%2BzkgOrNviX8l%2F4vWFa0DB%2FMx
8Ljx9yp3eK%2FfPFTkvPXJYyAUsD3d6yTCE%3D, last accessed August 29, 2023.

84.     On July 27, 2022, Jeff Louderback of The Epoch Times filed his Request to "Take Notes/Photos" during the Bond Hearing scheduled for July 28, 2022.  His request was granted. Id.

https://fcdcfcjs.co.franklin.oh.us/CaseInformationOnline/imageLinkProcessor.pdf?coords=tNkM
5DsudXuVmIaNxh33U0zZNswUCfJvNb1dqeKHx5Cd05CtRO62dTlj5GndH1UkarrAZRREVU
PhMOhTaIx8z36lLqXernWRvuM1NXo%2BXoYfhzkCaGI1tH3xS%2BvRhwCMEycwzc49PAI
DA3Mufx67svpNYO7o0UOTwZQDTCHODNk%3D, last accessed August 29, 2023.

85.     On July 27, 2022, Bethany Bruner filed her Request to "record/photograph" the Bond Hearing scheduled for July 28, 2022.  Her request was granted. Id.

https://fcdcfcjs.co.franklin.oh.us/CaseInformationOnline/imageLinkProcessor.pdf?coords=3Dhe
Mih1a%2FFsYWRtJCP7pgsxJP6d6k7WZcFOqxRJV9EER44jFsVJzanuHb1JcAcO89ROe65Vy
b9jGQonUWK%2FOfBgmExz0OvJA5gGhzzhwwfykomPqQGmAGXVH2xqzf2hZ7Cgs9uBZe
QJVJkTZLNr2%2FW7aLyN3w%2BoQMyXukvGxCM%3D, last accessed August 29, 2023.

86.     On July 28, 2022, NBC4 WCMH-TV filed its request to "Broadcast, Televise, Record" the Bond Hearing on July 28, 2022.   Its request was granted. Id.

https://fcdcfcjs.co.franklin.oh.us/CaseInformationOnline/imageLinkProcessor.pdf?coords=Bx87
p1PexZVi3%2BW9XHxi6bfBhgD4ONDohtONRdOD21K1VpgxCCQWwsudqCdSolCz%2FtU
qX3cLIhZmQkLqf%2Bglahdf%2FeXXj4wq8oezWIy5ktm4uHuI8DfOhW%2Ba06Nh2RjfYdDx
3DWWAc%2BJiLxDJU3G7nxL%2FhRaXJB1H4H6RNv7oEw%3D, last accessed August 29, 2023.

87.     On July 28, 2022, Paul Vernon of The Associated Press filed his request to "Photograph" the Bond Hearing on July 28, 2022.     His request was granted. Id. https://fcdcfcjs.co.franklin.oh.us/CaseInformationOnline/imageLinkProcessor.pdf?coords=TnE6 vGcZkbLbsvfJ2cZ1kfPKYr4OrzTSHUDOVlbjiHvKHkO1P3bq6QWO5FHWVIqt5EFMCxxlzt Zqlxm6tDXc3MfK%2BQLoVvz4kH0i7CU%2Fj2VtHRR3KaEbQJ001sj%2FG5soqqLn%2FL3 q1R7Yf3gosVpfM5OavDMGdFiaBcXObItblgo%3D, last accessed August 29, 2023.

88.     On September 1, 2022, Lacey LeCroy of Law & Crime Network filed a Request to "Broadcast/Televise/Record" a hearing scheduled for October 13, 2022.  Her request was granted.

89.     On September 9, 2022, Sonia Moghe of CNN filed a Request to "Broadcast, televise, record" the proceedings scheduled for October 13, 2022. Her request was granted. Id. https://fcdcfcjs.co.franklin.oh.us/CaseInformationOnline/imageLinkProcessor.pdf?coords=tdkei5 pfJ2Z4psWL%2BJXiFpWgEEVdCC0QnVVGHihgmFRd6sooewK9Rk7JJDdG%2F0UwP%2B %2FmkhO6UgNuOkLu3hnzt10cF4uRAwlbJDujdQOScmcGFZvNMI%2FNRGgtl8EbDCSu8X uZh6FpG3ms960PqJljoyRXBX3eCrwSdB%2FAKULg7Zg%3D, last accessed August 29, 2023.

90.     On January 4, 2022, Lacey LeCroy of Law & Crime Network filed a Request to "Broadcast/Televise/Record" a hearing scheduled for January 9, 2022. Her request was granted. Id. https://fcdcfcjs.co.franklin.oh.us/CaseInformationOnline/imageLinkProcessor.pdf?coords=VbJb 8iT2vrMC2tjQoesSaKjtirfE0CwNXkDd7imzeXPcRVcgYT3JxypCUuD41iH%2F0HAonhmTEk NrG6vIa%2BUErYmk4ck6pfOUizlO%2FKJP7UQRFoXIGPMx8KLOVQJOePYvv4Z6Roz8fd OgbLULZH3rll5Qgwz9OdXHxKVZOSYAOR0%3D, last accessed August 29, 2023.

91.     In her sworn testimony, Dr. Bernard claimed that on the evening of the rally on June 29, 2022, she provided "de-identified information about this particular patient." *Caitlin*

*Bernard, M.D. vs. Todd Rokita*, Cause No. 49D01-2211-MI-038101, Transcript of Preliminary Injunction Hearing (Day 2), p. 145.

92.     All elements of dates more specific than the year must be removed from the patient's information to qualify as de-identified information. 45 C.F.R. §164.514(b)(2)(C)

93.     Bernard disclosed the date of her patient referral and the date of the patient's procedure to within the week of June 27-July 1, 2022.

94.     Further, 45 C.F.R. §164.514(b)(2)(R) provides that to be considered de-identified, "[a]ny other unique identifying number, characteristic, or code" must be removed. Dr. Bernard failed to de-identify her patient in compliance with HIPAA when she discussed her patient's protected health information with Grant Callen and the *Indianapolis Star* reporter.

95.     The State of Indiana requires all abortions to be reported to the Indiana Department of Health through a Termination of Pregnancy Report.  Between June 24, 2022 and July 11 2022, there was only one ten-year-old patient who received an abortion.

96.     Bernard's disclosure of her patient's information to Dr. Grant Callen at a public rally violated 45 CFR §164.502(a) because it did not relate to treatment, payment or operations, nor did it fall under any exception under HIPAA.

97.     Dr. Bernard's disclosure of her patient's information to the *Indianapolis Star* reporter also violated 45 C.F.R. §164.502(a) because it did not relate to treatment, payment or operations, nor did it fall under any exception under HIPAA.

98.     Bernard's disclosure of her patient's information to Dr. Callen at the rally and the *Indianapolis Star* reporter also violated HIPAA's Minimum Necessary Rule. 45 CFR §164.502(b).

99.     IUH ratified Dr. Bernard's misconduct when Lauren Cislak, with the approval of the Privacy Office, Legal and the CEO, emailed a statement to multiple journalists on July 15, 2022, stating that it had conducted a review of Dr. Bernard's conduct and determined no privacy

violations occurred. Rudavsky, S. "HIPAA laws in 10-year-old's abortion," *Indianapolis Star*

July 15, 2022 10:30a.m. https://www.indystar.com/story/news/health/2022/07/15/iu-health-says-

indiana-doctor-did-not-violate-hipaa-laws-in-10-year-old-abortion-case/65374295007/ last

accessed August 29, 2023.

100.    By publicly ratifying Dr. Bernard's misconduct, IUH has revealed a systemic flaw

in its implementation and administration of HIPAA rules that affect the privacy of all its patients.

101.    At a November 21, 2022 hearing in Marion County for cause number 49D01-2211-

MI-038101, Dr. Bernard and her attorney entered an exhibit that contained a portion of the 10-

year-old girl's medical records. These medical records were protected health information.

102.    In her testimony, Dr. Bernard identified the exhibit as the 10-year-old girl's medical

records.

103.    Under HIPAA, there is an exception that permits a disclosure in judicial

proceedings. 45 C.F.R. § 164.512(e). For this exception to be applicable, there needs to be an order

from the court or a subpoena. 45 C.F.R. § 164.512(e)(1).

104.    In the above judicial proceeding, there was no court order permitting IUH to

disclose the patient's records.

105.    Further, the Office of the Indiana Attorney General, as counsel for the Defendants

in the matter was never provided a copy of a subpoena requesting this protected health information

as required under Indiana Rules of Trial Procedure 34(C).

106.    Upon information and belief, IUH, or one of its business associates, improperly

disclosed this protected health information to Dr. Bernard or her attorney without a court order or

subpoena.

107.    IUH's disclosure of the 10-year-old's medical records constitutes another violation

of HIPAA.

108.    Despite the multiple violations of HIPAA, in the November 21, 2022 hearing, Dr.

Bernard testified that she believed she complied with HIPAA. She also testified that she believed

she complied with Indiana's Patient Privacy law. *Caitlin Bernard, M.D. vs. Todd Rokita*, Cause

No. 49D01-2211-MI-038101, Transcript of Preliminary Injunction Hearing (Day 2), p. 139.

109.    During a deposition on May 16, 2023, Dr. Bernard was asked:

Q    Dr. Bernard, given what you said about the article, do you regret talking to
     the reporter now?

A    I can't make that determination

Q    Why not?

A    Because there's a lot of different factors that go into that and I haven't
     made that decision yet.

*In the Matter Of: The License of Caitlin Bernard, M.D. - License No. 01078719A.* Deposition of
Caitlin Bernard, M.D. May 16, 2023, p.138.

110.    On May 25, 2023, Dr. Bernard testified before the Indiana Medical Licensing

Board:

Q    You don't believe talking to the reporter at a rally was a violation of
     that patient's privacy, is that right?

A    I did not release any Protected Health Information, I complied with
     all patient confidentiality and HIPAA laws to the best of my
     knowledge, and again there was no information that I release that
     led to her being identified.

111.    On May 25, 2023, following a hearing, the Indiana Medical Licensing Board

determined: 1) Dr. Bernard's disclosures of patient information to Dr. Callen and the *Indianapolis

Star* reporter violated HIPAA, 2) Dr. Bernard failed to properly de-identify patient information,

3) Dr. Bernard's disclosure of patient information violated Indiana's rule on patient confidentiality,

and issued a Letter of Reprimand.

112.    On May 26, 2023, IUH issued the following statement to the media:

We appreciate the Medical Licensing Board's time dedicated to
understanding the issues involving our colleague Dr. Caitlin Bernard. We

are pleased she will continue to be a member of our medical team and provide compassionate care to her patients. We do not agree with the Board's decision regarding patient privacy regulations and stand by the HIPAA risk assessment. We believe Dr. Bernard was compliant with privacy laws.

113. Once again, IUH's public statement ratified Dr. Bernard's disclosure to the *Indianapolis Star,* which undermines the Medical Licensing Board's guidance regarding the type of conduct which is prohibited under HIPAA and Indiana's patient confidentiality rules.

114. Subsequent to the Medical Licensing Board hearing, Plaintiff has discovered numerous instances where IUH has sanctioned non-physician employees with termination for far less egregious patient privacy violations, but has failed to implement or enforce similar privacy policies or sanctions for its physicians.

115. IUH's most recent statement is likely to further confuse the members of its workforce regarding patient privacy requirements.

116. The continuing HIPAA violations demonstrate a systemic failure by IUH to implement and administer the HIPAA Privacy Rule which impacts all its patients on an ongoing basis as well as the Indiana rule governing physician's responsibility for protecting their patients' privacy.

## VII. FIRST CLAIM FOR RELIEF:
**FAILURE TO IMPLEMENT OR, IN THE ALTERNATIVE, FAILURE TO FOLLOW ADMINISTRATIVE, TECHNICAL AND PHYSICAL SAFEGUARDS TO PROTECT THE PRIVACY OF PROTECTED INFORMATION**

117. Plaintiff incorporates herein by reference all preceding paragraphs as if fully set forth herein.

118. HIPAA's Privacy Rule requires IUH to "reasonably safeguard protected health information from any intentional or unintentional use or disclosure that is in violation of the standards, implementation specifications or other requirements of this subpart." 45 C.F.R. § 164.530(c)(1).

119.    By either not having a policy or failing to enforce a policy that prohibits employees from talking about patients PHI for reasons other than treatment, payment or operations, IUH violated HIPAA.

120.    By either not having a policy or failing to enforce a policy that prohibits a physician from discussing patient information with the media without written patient authorization, IUH violated HIPAA.

121.    By either not having a policy that applied to physicians or failing to enforce a policy prohibiting the disclosure of protected health information in a legal proceeding without a court order or subpoena, IUH violated HIPAA.

122.    The violations alleged above constitute a systemic pattern or practice in violation of 45 C.F.R. § 164.530(c)(1) that affects all patients.

## VIII. SECOND CLAIM FOR RELIEF:
## FAILURE TO DOCUMENT DISCLOSURES OF PERSONAL HEALTH INFORMATION

123.    Plaintiff incorporates herein by reference all preceding paragraphs as if fully set forth herein.

124.    A covered entity must document disclosures of protected health information that are subject to an accounting.  45 CFR §164.528(d).

125.    IUH's failure to document Dr. Bernard's unauthorized disclosure of patient information to a physician colleague at a public rally unrelated to treatment, payment or operations constitutes a violation of HIPAA.

126.    IUH's failure to document Dr. Bernard's unauthorized disclosure of patient information to the Indianapolis Star reporter at a public rally constitutes a violation of HIPAA.

127.    IUH's failure to document its unauthorized disclosure of patient information to Dr. Bernard or her attorneys without a court order or subpoena constitutes a violation of HIPAA and will continue to violate HIPAA with respect to Indiana patients.

128.    The violations alleged above constitute a systemic pattern or practice in violation of 45 CFR §164.528(d) which affects all patients.

## IX. THIRD CLAIM FOR RELIEF:
## FAILURE TO IMPLEMENT, OR IN THE ALTERNATIVE, APPLY AND DOCUMENT SANCTIONS

129.    Plaintiff incorporates herein by reference all preceding paragraphs as if fully set forth herein.

130.    IUH failed to implement an appropriate sanctions policy, or in the alternative, apply sanctions according to its internal sanction policy which constitutes a violation of HIPAA.

131.    IUH failed to document the application of sanctions which constitutes a violation of HIPAA and will continue to threaten the privacy of Indiana patients.

132.    The failure to implement or apply sanctions against workforce members who violate HIPAA constitutes a systemic failure that threatens all patients.

## X. FOURTH CLAIM FOR RELIEF:
## FAILURE TO APPROPRIATELY TRAIN ITS WORKFORCE

133.    Plaintiff incorporates herein by reference all preceding paragraphs as if fully set forth herein.

134.    The Privacy Rule requires IUH to train its workforce on its "policies and procedures with respect to protected health information." 45 C.F.R. § 164.530(b)(1).

135.    IUH either failed to train its workforce regarding the necessity to obtain a patient's written authorization before disclosing protected health information to the media or, in the alternative, through its conduct of issuing its false and misleading press releases it undermined any

prior training by ratifying Dr. Bernard's conduct and publicly declaring that no HIPAA violation occurred.

136.     IUH's failure to appropriately train its workforce on the policies and procedures with respect to protected health information, violates 45 C.F.R §164.530(b)(1) and constitutes a systemic threat to all patients.

## XI. FIFTH CLAIM FOR RELIEF:<br>FAILURE TO NOTIFY PATIENT OF BREACH

137.     Plaintiff incorporates herein by reference all preceding paragraphs as if fully set forth herein.

138.     For each breach of the patient's information, IUH had a duty to notify its patient or the patient's parent of the breach.

139.     IUH failed to notify the 10-year-old patient or her parent of the breach which occurred when Dr. Bernard discussed her case with another physician at a public rally.

140.     IUH failed to notify the 10-year-old patient or her parent of the breach which occurred when Dr. Bernard spoke with a reporter about her patient's health information.

141.     IUH failed to notify the 10-year-old patient or her parent of the breach which occurred when it provided her medical records to Dr. Bernard or her attorneys for purposes of civil litigation without obtaining patient consent, a court order, or a subpoena.

142.     The violations alleged above constitute a systemic pattern or practice in violation of 45 CFR §164.404(a)(1) which affects all patients.

## XII. SIXTH CLAIM FOR RELIEF:<br>FAILURE TO MITIGATE HARM

143.     Plaintiff incorporates herein by reference all preceding paragraphs as if fully set forth herein.

144.     IUH had a duty to mitigate the harm caused by Dr. Bernard's violations of HIPAA.

145.    Instead of mitigating the harm, IUH's protectionist approach compounded the damage done by Dr. Bernard's violations of HIPAA by issuing a false and misleading statement to the media indicating that no HIPAA violation had occurred, misleading the public and its workforce that discussing a patient's protected health information with a colleague at a public rally for purposes wholly unrelated to treatment, payment, or operations is permitted by HIPAA when it is not.

146.    Instead of mitigating the harm, IUH compounded the damage done by Dr. Bernard's violations of HIPAA by issuing a statement to the media indicating that no HIPAA violation had occurred, misleading the public and its workforce that speaking to a reporter about a patient's protected health information without the patient's consent is permitted under HIPAA when it is not.

## XIII. SEVENTH CLAIM FOR RELIEF
## VIOLATIONS OF INDIANA DECEPTIVE CONSUMER SALES ACT

147.    Plaintiff incorporates herein by reference all preceding paragraphs as if fully set forth herein.

148.    As a medical services provider, IUH is a seller for purposes of the Deceptive Consumer Sales Act, (DCSA) Ind. Code § 24-5-0.5-1 et. Seq.

149.    For purpose of the DCSA, IUH's provision of medical services constitutes a consumer transaction.

150.    In its notice of privacy practices, IU Health represents:

> IU Health will use your protected health information and disclose it outside of IU Health for treatment, payment, healthcare operations, and when permitted or required by law. Other uses and disclosures of your protected health information not covered by this Notice will be made only with your authorization.

151.    By issuing its press release on July 15, 2022, which represented that it had conducted an investigation into whether Dr. Bernard complied with patient privacy laws

constitutes unfair, abusive, or deceptive acts for each consumer by providing them with an unjustified belief that IUH enforces privacy standards and by incorrectly stating that Dr. Bernard's conduct had been determined to comply with privacy laws, when the statement was not true and when no such determination had actually been made.

152.    By issuing its press release on May 26, 2023, IUH again ratified Dr. Bernard's privacy law violations.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff requests that this Honorable Court:

1.    Enter judgment in favor of Plaintiff and against Defendants for the violations as alleged herein;

2.    Enter a permanent injunction to prevent Defendants from continuing to violate HIPAA by:

   a.    Implementing or updating its administrative, technical and physical safeguards to protect patients' protected health information.

   b.    Prohibiting Defendants from ratifying the HIPAA violations of its workforce.

   c.    Prohibiting Defendants' workforce from disclosing patients' Protected Health Information for purposes other than those expressly permitted under HIPAA without written patient authorization.

   d.    Prohibiting Defendants' workforce from disclosing its patients' Protected Health Information to the media without a HIPAA compliant authorization from its patient.

e.   Prohibiting Defendants' workforce from disregarding the Minimum Necessary Rule.

f.   Requiring Defendants to document the disclosures of patient Protected Health Information as required by HIPAA.

g.   Requiring Defendants to implement and follow an appropriate sanctions policy, including the documentation of its sanction activity as required by HIPAA.

h.   Requiring Defendants to notify its patients of a breach as required by HIPAA.

i.   Requiring Defendants to mitigate the harm of its failure to comply with HIPAA.

j.   Requiring IUH physicians to comply with the Indiana patient confidentiality rule 844 I.A.C. 5-2-2.

3.   Award damages, attorney's fees and cost to Plaintiff as permitted by 42 U.S.C. §1320-d(5).

4.   Award remedies as permitted by Ind. Code § 24-5-0.5-4.

5.   Such other relief the Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiffs demand a trial by jury of all issues so triable.

Respectfully submitted,

THEODORE E. ROKITA
Indiana Attorney General
Attorney No. 18857-49

Date: September 15, 2023      By:

Douglas S. Swetnam
Section Chief Data Privacy & ID Theft Unit
Atty. No. 15860-49
Indiana Government Center South, 5th Floor
302 West Washington Street
Indianapolis, Indiana 46204
Phone: (317) 232-6279
Fax: (317) 232-7979
Email: Douglas.Swetnam@atg.in.gov

Scott L. Barnhart
Chief Counsel and Director Consumer Protection
Division
Atty. No. 25474-82
Phone: (317) 232-6309
Fax: (317) 232-7979
Email: Scott.Barnhart@atg.in.gov

Carah J. Rochester
Deputy Attorney General
Atty. No. 36266-41
Phone: (317) 234-7015
Fax: (317) 232-7979
Email: Carah.Rochester@atg.in.gov
*Counsel for Plaintiff*