**ESI SUPPLEMENT TO CASE MANAGEMENT PLAN**

To be prepared and submitted as directed pursuant to paragraph III.K. of the Master Case Management Plan or by Court Order.

1. <u>Discovery Scope</u>.  Following a detailed discussion between counsel of a discovery plan for this matter, each party should outline below the categories and types of information that party intends to seek in discovery in this matter.  This outline should include, in addition to identification of the various topics on which discovery will be sought and identification of the nature and type of documents to be produced, a list by each party of the potentially relevant custodians of such information and the date ranges relevant to discovery in this matter.

    - Policies related to patient privacy, human resources, and investigation into misconduct by employees;
    - Reports or complaints of violations of the above policies;
    - Human resource records, including investigation records, for employees alleged to have violated HIPAA, Indiana patient privacy laws, or internal patient privacy policies;
    - Communication records between Privacy Office and regional human resource representatives concerning any investigation into or reports of employees alleged to have violated HIPAA, Indiana patient privacy laws, or internal patient privacy policies; and
    - Communication records between staff as it relates to any allegations or investigations of privacy violations by staff.

2. <u>ESI Sources and Volumes</u>.  With regard to the discovery outlined in paragraph 1, each party should discuss the types of ESI (*e.g.*, Outlook e-mail, Word documents, Excel spreadsheets, CAD drawings, etc.) implicated by the opposing party's requests (meaning that Defendant should address the categories and types of information identified by the Plaintiff, etc.), any proprietary software involved in the production of such ESI, the location of such ESI (*e.g.,* 14 servers located in 3 states, 57 individual PC hard drives that are not connected to a central server, etc.), and the estimated volume of ESI implicated by such requests (*e.g.*, 20 GB of Outlook .pst files, 500 MB of Excel spreadsheets, etc.).

    Proposed categories and types of information likely include Outlook email files with attachments, Microsoft Word documents, Microsoft Excel spreadsheets, PDF files, Microsoft Powerpoint files, JPEGs, paper documents, and proprietary document types and/or databases.

    Defendant(s):

3. Accessibility.  Identify any potential sources of ESI in this matter that are "not reasonably accessible" as defined by Fed. R. Civ. P. 26(b)(2)(B).

   None identified at this time.

4. ESI Management Software.  Describe the software each party intends to use to manage any ESI produced in this matter and identify the Information Technology personnel primarily responsible for assisting counsel with the production and management of ESI in this matter.

   Office365 Discovery Console; SalesForce Classic and iManage for case management; and Everlaw for review and production. Senior Paralegal Emily Trent, Consumer Litigation Section, is primarily responsible for assisting Plaintiff's counsel with the use of Everlaw. Eric Beard, Litigation Support Manager, is primarily responsible for assisting Defendants' counsel.

5. Metadata.  Identify the potential sources of metadata in this matter and each party's anticipated use of metadata in this matter.

   Plaintiffs anticipate producing electronic correspondence and documents containing metadata describing the creation of such correspondence and documents. Plaintiffs anticipate using metadata to identify document custodians and creation and modification information.

   Defendant(s):

6. ESI Format.  Set forth the format in which each party will produce ESI in this matter.

   See Addendum A.

7. Discovery Sequencing.  Have the parties agreed on a plan for the sequencing of discovery in this matter? No

   If yes, please describe such agreements:

   If no, please describe the efforts undertaken to reach agreement and identify the issues that remain outstanding: The parties are conferring regarding the priority of discovery requests in this matter.

8. <u>Search Protocol</u>.  Have the parties agreed on any protocol for the identification and review of relevant ESI (*e.g.*, search terms, predictive coding, etc.)? No

    If yes, please describe such agreements, including, if applicable, a list of agreed search terms to be used:

    Parties agree to use reasonably appropriate search tools and terms. If one or more of the parties intend to use technology assisted review (TAR) in the production of ESI, the parties will agree to a separate protocol governing the use of TAR and have agreed to meet and confer to develop an appropriate list of search terms.

    Parties will make use of Boolean search functions for ESI housed on servers and the parties will provide each other with a list of search terms to be included. Notwithstanding the use of search terms to identify responsive ESI housed on servers, if a party is aware of the existence of non-privileged responsive ESI, then that party shall produce such documents even if they do not include any of the search terms being applied generally to ESI housed on servers.

    Parties will also make use of application search functionality native to the e-mail program for personal email accounts used by the parties (e.g., searching within Gmail or Outlook).

    If a Party is aware of the existence of documents or data sources that contain responsive information that is not reasonably searchable (e.g., images), the Parties agree to review such documents or data sources manually for responsiveness and production because applying search terms to these documents and data sources will be insufficient.

    If no, please describe the efforts undertaken to reach agreement and identify the issues that remain outstanding: The parties are conferring regarding search terms.

9. <u>Preservation</u>.  Describe what efforts each party has undertaken to ensure the preservation of ESI potentially relevant to this matter and identify any unresolved issues pertaining to the preservation of ESI in this matter?

    The parties have begun to gather and preserve documents and communications potentially relevant to and/or potentially subject to discovery in this lawsuit, including both physical documents and ESI.

    Unresolved issues:

10. <u>Cost of Production</u>.  Each party should analyze the data provided in paragraph 2 and provide an estimate of the costs associated with production of ESI in this matter:

    The parties will continue to meet and confer concerning the costs associated with the production of ESI. The parties will supplement this document when the parties have concluded the meet and confer process.

11. <u>Cost Allocation/Savings</u>.  Describe below the parties' discussions regarding cost-shifting or cost-savings measures in this matter and set forth in detail any agreements reached between the parties in that regard:

    The parties will continue to meet and confer concerning cost-shifting or cost-savings measures concerning the production of ESI in this matter and have not yet reached any agreement. The parties will supplement this document when the parties have concluded the meet and confer process.

12. <u>Discovery Proportionality</u>.  Do the parties agree that the discovery of ESI in this matter satisfies the proportionality standard set forth in Fed. R. Civ. P. 26(b)(2)(C)? **X Yes**  No

    If no, identify the nature of the dispute:

13. <u>Claw Back Agreement</u>.  Have the parties agreed on the following unintentional production "claw back" provision?  **X Yes**  No

    > In the event that a document protected by the attorney-client privilege, the attorney work product doctrine or other applicable privilege or protection is unintentionally produced by any party to this proceeding, the producing party may request that the document be returned.  In the event that such a request is made, all parties to the litigation and their counsel shall promptly return all copies of the document in their possession, custody, or control to the producing party and shall not retain or make any copies of the document or any documents derived from such document.  The producing party shall promptly identify the returned document on a privilege log.  The unintentional disclosure of a privileged or otherwise protected document shall not constitute a waiver of the privilege or protection with respect to that document or any other documents involving the same or similar subject matter.

    If no, set forth the alternative provision being proposed?

14. <u>Other</u>. Identify all outstanding issues or disputes concerning ESI not otherwise addressed herein.

  The parties believe that all disputes are set forth above within this document.

### ADDENDUM A: Production of Electronically Stored Information and Imaged hard copy paper collections ("Production Specification")

The following outlines the technical requirements for producing electronically stored information ("ESI") and imaged/scanned hard copy paper collections, and associated metadata.

1. **General Instructions**
   a. Responsive ESI will be produced using the Concordance load file format. Specific details are provided in this exhibit.
   b. All deliverables will include a read me text file (e.g. ReadMe.txt) The file will contain the following information:
      i. List/description of each piece of media (hard drive, USB drive, DVD/CD etc.) or files included in the production.
      ii. Total number of records in load file.
      iii. Total number of images/pages in load file.
      iv. Total number of native files in load file.
      v. List of custodians.
      vi. Time zone in which emails and/or files were standardized during conversion.
2. **Specification of Modification**.

Any modifications or deviation from the Production Specifications may be done only with the express permission of the parties. Any responsive data or documents that exist in any locations, system or native forms not discussed in these Production Specifications remain responsive and, therefore, arrangements must be made with the parties to facilitate their production.

3. **Production Format of ESI and Imaged Hard Copy**.

All ESI, except as outlined in section 5c, shall be rendered to type TIFF image format, and accompanied by a Lexis/Nexis Concordance Image Cross Reference file ("Option" or ".OPT"). All applicable metadata (see section 4 below) for each item shall be extracted and provided in Lexis/Nexis Concordance Load File ("DAT") format. Extracted or OCR text will be provided and the document level and in a separate file:

   a. **Image File Format.** All images, paper documents scanned to images, or rendered ESI, shall be produced as 300dpi single-page TIFF files, CCITT Group IV format (black & white). Documents should be uniquely and sequentially Bates numbered with the Bates number endorsed (burned into) each image.
      i. All TIFF file names shall include the unique Bates number burned into the image.
      ii. Each Bates number shall be a standard length, include leading zeros in the number if necessary, and be unique for each produced page.
      iii. All TIFF image files shall have the ".tif" extension.

  iv. Images should be able to be OCR'd using commercial off-the-shelf ("COTS") products, such as Lexis/Nexis LAW PreDiscovery software.

  v. All pages of a document or all pages of a collection of documents that comprise a folder or other logical grouping, including a box, should be delivered together via a single piece of media.

  vi. All TIFF images should be provided in a folder called "IMAGES" with each subfolder containing no more than 1000 files, except to keep family-related (i.e. parent, child) documents together.

 b. **OPT File Format.** TIFF image files should be accompanied by an OPT file that associates each Bates number with its corresponding single-page TIFF image file and includes a file path to the TIFF image file. Below is a sample of the OPT file. Each line is a record representing an image page and each field in the record is separated or delimited by a comma (,) character.

```
REL00001, REL)!,D:\IMAGES\001\REL00001.TIF,Y,,,3
REL00002,REL01,D:\IMAGES\001\REL00002.TIF,,,,
REL00003,REL01,D:\IMAGES\001\REL00003.TIF,,,,
REL00004,REL01,D:\IMAGES\001\REL00004.TIF,Y,,,2
REL00005,REL01,D:\IMAGES\001\REL00005.TIF,,,,
```

A description for the fields for each record/line, from left to right are:

| Field | Example from Line 1 above | Description of Field |
| --- | --- | --- |
| Field One | REL00001 | The page identifier/Control/Bates number |
| Field Two | REL01 | The volume identifier. This field is not required but you must include a space in each line of the load file if this field is not used. |
| Field Three | D:\IMAGES\001\REL00001.TIF | The relative path to the associated TIFF image file. |
| Field Four | Y | A "Y" indicates this image is the first page of a document. |
| Field Five | (blank) | Not required, but if used is intended to indicate this image is the first page of a new folder |

7

| Field Six | (blank) | Not required, but if used is intended to indicate this image is the first page of a new box |
|---|---|---|
| Field Seven | 3 | Not required, but often used to indicate the number of pages for a document |

    c. **DAT File Format** TIFF image files should also be accompanied by a DAT file which provides each image's metadata, extracted text and native files; linked by the image's Bates number. The DAT file should contain the required metadata fields listed in section 4 below. The following are additional specifications for the DAT file.
        i. The first row in the DAT file should be a header row listing the field names in the order as defined in section 4
        ii. Each line in the DAT file should represent one document/file
        iii. The DAT file should use the following delimiters:

| Delimiter Type | Character | ASCII Code | Description |
|---|---|---|---|
| Column | ¶ | 020 | The character that separates each field or column |
| Quote | Þ | 0222 | The character which marks the beginning and end of each field. |
| Newline | « | 174 | The character that marks the end of a record/line. |
| Multi-Value | ; | 059 | The character that separates distinct values in a field /column |

    d. **Extracted/OCR Text Files**. Each document included in the load file should have a corresponding text file containing either extracted text or OCR text from the document.

        i. The name of the text files should be assigned the associated BEGDOC number and ".txt" extension.

8

ii. All text files should be provided in a folder called "TEXT" with each subfolder containing no more than 1000 files, except to keep family-related (i.e. parent-child) documents together.

iii. Files the do not contain text, such as image files (e.g. .bmp, .png, etc.) will not have a corresponding text file.

e. **Native Files**. All native files should be provided in a folder called "Native" with each subfolder containing no more than 1000 files, except to keep family-related (i.e. parent, child) documents together.  See section 5b for file types requiring native production.

### 4. Required Metadata Fields

| | |
|---|---|
| BEGDOC | Beginning control number assigned to each page/document |
| ENDDOC | Ending control number assigned to each page/document |
| BEGATTACH | Beginning bates number of attachment range |
| ENDATTACH | Ending bates number of attachment range |
| MD5HASH | Unique MD5 hash value for the document |
| Attachment Names | File names of attachments |
| CUSTODIAN | Person/place/system from where the document was collected |
| RECORDTYPE | The type of document, such as, Image, E-Mail, Loose E-Mail, Attachment, eDoc, etc. |
| APPLICATIONNAME | Name of software used to open document |
| DOCEXT | The original file extension (xls, doc, etc.) of the document |
| FILENAME | For native files: The original file name of a native file<br><br>For Email records: Subject of e-mail message. |
| AUTHOR | Creator of document (eDoc) |
| EDSOURCE | Fully qualified original path to the source folder, files and/or mail stores |
| EDFOLDER | For native files: full path to source files |

| | |
|---|---|
| DATESENT | Date email is sent |
| DATERCVD | Received date of an email message |
| DATECREATED | Creation date o |
| DATELASTMOD | Date document was last modified |
| DATEACCESSED | Date the native file was last accessed |
| TIMESENT | Sent time of an email |
| TIMERCVD | Received time of an email |
| TIMECREATED | Creation time of a native file |
| TIMELASTMOD | Time the native file was last modified |
| TIMEACCESSED | Time the native file was last accessed |
| FROM | Author of email message |
| TO | Main recipient(s) of email message |
| CC | Recipient(s) of "carbon copies" of email message |
| BCC | Recipient(s) of "blind carbon copies" of email message |
| EMAILSUBJECT | Subject of an email message |
| ATTACH | For parent records-lists the original filenames of all attached records, separated by the multi-value delimiter |
| ATTACHMT | For parent records – lists of BEGDOC numbers for all attached records, separated by the multi-value delimiter |
| DATELASTPRINTED | Date document was last printed |
| DATELASTSAVED | Date document was last saved |
| CONVERSIONINDEX | Email threat identification created by the original email system. |
| NATIVEPATH | Relative path to the original native file |
| TEXTPATH | Relative path to the associated text file for a record |

### 5. Special Processing Considerations

a. **Bates Numbering** All TIFF image files should be assigned the Bates numbers for that image/page file which is the same Bates number endorsed (burned into) the image. Native files and Text files should be assigned the BEGDOC number for the item. If the parties agree to a rolling production, the naming/numbering convention shall remain consistent throughout the entire production.
b. **Production of Spreadsheets, Presentations and Multimedia Files.** All Spreadsheet (e.g. Excel) presentation (e.g. Power Point), and multimedia files (e.g. video and/or audio files) shall be produced in the unprocessed "as kept in the ordinary course of business" state (i.e. native format). A single-page placeholder TIFF image file should be provided and appropriate image file information included in the OPT file. The associated metadata for the files should be included in DAT file.
c. **Production of Structured or Proprietary Data Formats**. Prior to any production of responsive data from a structured database (e.g. Oracle, SAP, SAL, MySQL, QuickBooks, etc.) or in a proprietary format, each party will identify the relevant systems and the related content. The parties will then agree on appropriate production formats for those data sources.